UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS DEYKES,

    Plaintiff,                       Case No. 2:16-cv-11828

v.                                       HONORABLE STEPHEN J. MURPHY, III

COOPER-STANDARD AUTOMOTIVE,
INC., et al.,

    Defendants.

                                      /

**ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS COUNT I** (document no. 8) **AND DISMISSING THE COMPLAINT**

    Plaintiff Douglas Deykes filed a complaint against his former employer, Defendant Cooper-Standard Automotive, Inc. Deykes alleged that Cooper-Standard terminated him from employment in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act and Michigan's Elliot-Larsen Civil Rights Act. Cooper-Standard filed a motion to dismiss the Dodd-Frank claim. For the reasons below, the Court will grant the motion and dismiss the case.

**BACKGROUND**

    Cooper-Standard hired Douglas Deykes in March 2005. Compl. ¶ 14, ECF No. 1. He served as the Director of Internal Audit, and within a few years, he was promoted to Vice President of Internal Audit and Compliance. *Id.* ¶¶ 14–15. Among other responsibilities, Deykes ensured that the company complied with governmental financial regulations set forth in the Sarbanes-Oxley Act. *Id.* ¶ 16.

    Deykes alleges the following: in late April or early May of 2015, a Cooper-Standard employee reported a suspicious corporate financial account to Deykes. *Id.* ¶¶ 19–20. The account was located in China and named "public relation expenses." *Id.* ¶ 19. The

employee gave Deykes a list of questionable payments made from the account. *Id.* ¶ 20. Based on the information, Deykes conducted an investigation into the account. *Id.* ¶ 21. He discovered that Cooper-Standard's quality group in China used the account to provide illegal payoffs to Chinese government officials. *Id.* Deykes promptly notified the CFO of Cooper-Standard, Matthew Hardt, and the Cooper-Standard general counsel of the payments. *Id.* ¶ 22. Additionally, Deykes expressed his concern to Hardt and the general counsel that the payments to Chinese officials violated the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd. *Id.* ¶ 23. On September 3, 2015, Hardt fired Deykes, who then filed this suit for wrongful termination. *Id.* ¶ 29. Cooper-Standard's motion to dismiss followed.

## LEGAL STANDARD

Civil Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court may only grant a 12(b)(6) motion to dismiss if the allegations are not "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In evaluating the motion, the Court presumes the truth of all well-pled factual assertions. *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir. 2008). Moreover, the Court must draw every reasonable inference in favor of the non-moving party. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must grant dismissal. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir.

2009).

## DISCUSSION

Deykes claims that the anti-retaliation provisions of the Dodd-Frank Act provide him with a cause of action against his former employer. To determine whether the Act imposes liability on Cooper-Standard, the Court begins, "[a]s with any question of statutory interpretation" with the "language of the statute itself." *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007). "If the language of the statute is clear, then the inquiry is complete, and the court should look no further." *Id.* "Only if the statute is inescapably ambiguous" will the Court look to other sources, like "interpretations by other courts, legislative history, policy rationales, and the context in which the statute was passed" to discern the legislative meaning. *Id.* (quotations omitted).

I. The Statute's Definition of "Whistleblower"

The Dodd-Frank Act provides a private right of action to a "whistleblower" fired in retaliation for a protected act. The Act provides "only one definition of a whistleblower, and it is found in the definition section." *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 653 (E.D. Tenn. 2015) (holding that an employee who assisted an FBI investigation of a securities violation is not protected by the Dodd-Frank Act). "The term 'whistleblower' means any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a). And when a "statute's definitional section says a word 'means' something, the clear import is that this is the *only* meaning." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 226 (1st ed. 2012). Therefore, "[r]eporting to the SEC is the precondition that triggers the anti-retaliation

protections of the statute." *Verfuerth v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 645 (E.D. Wis. 2014) (holding that Dodd-Frank anti-retaliation provisions do not apply to an employee who reported internally, but not to the SEC).

Here, Deykes alleges that he made a report of a suspected violation of the Foreign Corrupt Practices Act. Compl. ¶ 22–23, ECF No. 1. But he alleges that he made the report internally, to Cooper-Standard's CFO and general counsel. *Id.* Deykes does not allege that he reported anything to the SEC.

The statutory language unambiguously defines "who is protected" by the Act: the anti-retaliation protections of the Act only apply to a person who reports a suspected securities violation "to the Commission." *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 625 (5th Cir. 2013). A person who reports to anyone else — the FBI or a Board of Directors for example — falls outside the Act's definition of whistleblower. *Verble*, 148 F. Supp. 3d at 656; *Verfuerth*, 65 F. Supp. 3d at 646. Thus, Deykes does not meet the statutory definition of a whistleblower because he did not report "to the Commission." He is not protected by the Dodd-Frank Act, and his claim fails as a matter of law.

II.  Deykes's Definition of "Whistleblower"

Deykes urges the Court to adopt a more expansive definition of "whistleblower." He argues that a person who reports a security violation internally, but not to the Commission, should also be protected as a whistleblower. Resp. 8, ECF No. 10. To support his position, Deykes points to section (h), subsection (iii) which "appears to contemplate a broad scope of protection for individuals who do *not* make reports to the Commission." *Id.* (quoting *Somers v. Digital Realty Trust, Inc.*, 119 F. Supp. 3d 1088, 1100 (N.D. Cal. 2015)). Deykes contends that if whistleblower is defined only as someone who reports to the Commission,

then subsection (iii) becomes "meaningless" and "superfluous." *Id.* at 8–9.

In *Asadi*, the Fifth Circuit addressed the interplay between the definitions section and section (h) of the Act. 720 F.3d at 625. The court explained that the definitions section of the Act describes "who is protected" and Section (h) identifies "what actions by protected individuals constitute protected activity." *Id.* The actual text of section (h) reads:

> (h) Protection of whistleblowers
>
> (1) Prohibition against retaliation
>
> (A) In general
>
> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower —
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C § 78-u-6(h).

In short, section (h) states that an employer may not retaliate against a whistleblower for: "(i) reporting activity to the SEC, (ii) participating in judicial or administrative action, or (iii) making disclosures required or protected by the Sarbanes-Oxley Act or other securities laws." *Verfuerth*, 65 F. Supp. 3d at 644. The statutory definition of "whistleblower" —

someone who reports a "a violation of securities laws to the Commission" — limits the scope of subsection (iii), but does not render it superfluous. For example, subsection (iii) would protect whistleblowers from retaliation if they report a Sarbanes-Oxley violation internally and, unbeknownst to their employers, also report to the SEC. *Asadi*, 720 F.3d at 627–28. Thus, subsection (iii) holds liable employers who retaliate against an employee who reports both internally and to the SEC, even if the employer wasn't aware of the SEC report when terminating the whistleblower. *See id.*

To give the statute another construction would require an unnatural reading. The Court will not strain to find a contradiction where none exists. Rather, the Court must "interpret provisions of a statute in a manner that renders them compatible, not contradictory." *Id.* at 622.

Moreover, Deykes's preferred construction would make some of the statutory language "superfluous, void or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If the Court were to adopt Deykes's definition of "whistleblower," the words "to the Commission" would serve no purpose at all. And the Court does not have the authority to "alter[] a federal statute by deleting three words ('to the Commission') from the definition of 'whistleblower' in the Dodd–Frank Act." *Berman v. Neo@Ogilvy, LLC*, 801 F.3d 145, 155 (2d Cir. 2015) (Jacobs, J., dissenting).

III. <u>The SEC's Definition of "Whistleblower"</u>

Deykes points to regulations created by the SEC and submits that "sufficient ambiguity exists in the statute to warrant deference to the SEC's interpretation." Resp. 4, ECF No. 10. According to the SEC, "whistleblowers" are not only people who provide

6

"information relating to a violation of the securities laws to the Commission[.]" 15 U.S.C. § 78u-6(a). Instead, the SEC has determined that the anti-retaliation provision of the Act also applies to "individuals who report to persons or governmental authorities *other than the Commission*." Securities Whistleblower Incentives and Protections, Release No. 34-64545, 76 Fed. Reg. 34300-01, 2011 WL 2293084, at *34304 (June 13, 2011) (emphasis added).

But "[w]hen the statute is unambiguous, there has been no delegation to the agency to interpret the statute and therefore the agency's interpretation deserves no consideration at all, much less deference." *Terrell v. United States*, 564 F.3d 442, 450 (6th Cir. 2009). And here "Congress could not have defined 'whistleblower' more clearly[.]" *Verfuerth*, 65 F. Supp. 3d 645. The SEC's expansive definition of whistleblower deserves no consideration from the Court.

IV.  Public Policy

Lastly, Deykes argues that the Court should adopt an expanded definition of whistleblower because of "[p]ublic policy concerns." Resp. 10, ECF No. 10. Deykes points to the stated purpose of the Dodd-Frank Act: to "promote the financial stability of the United States by improving accountability and transparency of the financial system." *Id.* And unless the SEC's expanded definition of whistleblower is adopted, Deykes concludes, the Act will be "utterly ineffective" at achieving Congress's intent. *Id.*

Deykes, the SEC, and the Second Circuit agree: protecting employees who report securities violations either internally or to the SEC is a better policy than only protecting employees who report violations to the SEC. *See, e.g., Berman*, 801 F.3d at 155. Others might argue that the better policy is to discourage people from only reporting internally: unless the SEC is provided with the information, internal reports of securities violations are

more likely to be ignored or swept under a corporate rug.

In any event, whether a statute sets optimum policy is not for the Court to decide. Congress alone has the power to legislate. *See* U.S. Const., art. 1, § 1. The SEC does not have the power to re-write legislation, and neither does the Court. Since "the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). Accordingly, the Court will enforce the clear text of the statute and dismiss Count I. The Court will also decline to exercise supplementary jurisdiction over the state-law claim in Count II. *See* 28 U.S.C. § 1367(c)(3).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion to Dismiss Count I (document no. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that Count I of the Complaint (document no. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Count II of the Complaint (document no. 1) is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 22, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 22, 2016, by electronic and/or ordinary mail.

                                            s/David P. Parker
                                            Acting Case Manager